JANUARY TERM, 1883, No. 313.                    OCTOBER 18, 1883.

## Henry Weller's Appeal.

1. Under the acts of 4th March, 1852, sec. 2, P. L., 574, and 12th April, 1858, P. L., 243, the Court has authority to amend, by striking from the record the name of one of the defendants in a confessed judgment, where such name, being that of the payee and plaintiff, was signed to the judgment note as maker of the note by mistake.

2. The fact that another defendant who was surety in the judgment is an illiterate man, understanding the English language imperfectly, and that he signed the note upon the strength of the payee's name being also signed to it as maker, will not relieve him from liability in the absence of fraud.

3. One who signs an instrument which he does not understand without asking to have it read or explained to him is bound by it.

Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, and GREEN, JJ. ; CLARK, J., absent.

Appeal of Henry Weller from the decree of the Court of Common Pleas of *York County*, discharging the rule to open judgment and to let the defendant, Henry Weller, into a defense.

On April 2, 1879, judgment for $500 was entered in this case by John Keener against John Keener, David Miller, and Henry Weller, upon the following judgment note :

"$500.          YORK, PA., *April they-first, 1874.*

We or Eather of us Promise to pay to the order of . . . of John Keener the sum of . . . of five Hundred Dollars without defalcation for value received.

And we hereby authorize the Prothonotary of York county to enter, or any attorney of any court of record, to appear for me and confess judgment for above sum,

interest, and costs, and release of errors and hereby waive all stay of execution. And further, we do hereby agree, that all our estate and effects, without exception or exemption, shall be subject to levy and sale in execution thereof to an amount sufficient to satisfy said judgment; hereby waiving and relinquishing all benefit of any law exempting such estate and effects, or any part thereof, from such levy and sale.

And further, we hereby waive and dispense with an inquisition and condemnation of all real estate, and agree that the same shall be sold upon a writ of *fieri facias*, or any other writ that may be necessary for that purpose.

Witness . . . hand and seal, this . . . day of . . . . A.D., 187 .

· Witness :                    JOHN KEENER,    [SEAL.]
                              DANIEL MILLER,
                              HENRY WELLER."

On December 19, 1881, the judgment was amended by striking out the name "David," and inserting in the place and stead thereof the name "Daniel," so as to make the name read "Daniel Miller."

On February 7, 1882, the Court granted a rule to show cause why the said judgment should not be opened and the name of John Keener stricken from the record as one of the defendants.

Under this rule the following depositions were taken:

John L. Keener, the plaintiff, testified in substance, *inter alia :*

I asked Henry Kohr to fill up this note for me. I can't tell where he is. He done business for me. I did not write my name 'John Keener' at the bottom of the note. It looks like Kohr's handwriting. To the best of my knowledge Kohr wrote my name to this note. Daniel Miller came to me and asked me for money. I gave him the money—five hundred dollars. I hold that note against Daniel Miller and Henry Weller. I hardly know half the letters in English writing. I can read what is written plainly. I did not see Weller sign it. Miller brought the note to my house signed. I wouldn't give him the money until I got the note.

· On behalf of the defendants, Henry Weller testified in substance, *inter alia :*

One day I found Mr. Miller at my house and ate dinner, and on the way going down from dinner to the shop, Mr. Miller says he has a paper for me to sign for him to borrow some money. He showed me the paper and he reached me the paper, and I saw Mr. Keener's and

Mr. Miller's name on it. Then I say: 'Well, its no trouble here, no danger?' He says: 'No.' I says: 'Where is my name to go?' He showed me the spot. He says: 'Here.' But I would not sign it if I did not see both parties' names on it—Mr. Miller and also Mr. Keener. I trusted to Keener's name in front of mine to keep me from being harmed. Would not trust to Miller's name alone, although he was pretty well-to-do at the time.

On cross-examination, he said: I did not see Mr. Keener's name in the body of the note. I don't know whether it was in it or not.

Daniel Miller testified in substance, *inter alia*: I remember borrowing money from Mr. Keener and giving him a note. I went to Mr. Weller's house and ate dinner with him. We went out, walked down the street. I asked him if he would go security for me. I reached out the paper—we went in the corner-store, and he put down his name. To the best of my knowledge, I said, "Here is Keener's name;" I didn't think it would make any trouble. I paid eight per cent. interest. For some time after the note became due, I was able to pay all my debts. I offered to pay this note because he charged me too much interest. So he left half a dollar off; he only charged me seven and a half.

I didn't say anything about borrowing money from Mr. Keener. I told Mr. Weller, 'Here is a note; I want you to go security for me." I told him the amount.

On July 11, 1882, this rule was made absolute, and the name of John Keener ordered to be stricken off as one of the defendants.

On August 3, 1882, the Court granted a rule to show cause why the judgment should not be opened and defendant, Henry Weller, let into a defense.

Under this rule, depositions were taken to the same effect as above, and in addition thereto John L. Keener, against the rule, testified, *inter alia*, as follows: "Daniel Miller never offered to pay me this note. The note is now due with interest. I charged six per cent. interest a year. Sometimes Miller could not make the interest when it was due, and then he said I should have a little for waiting on him. I never refused to take the amount of this note from either Daniel Miller or Henry Weller, for they never offered it to me. I never made any misrepresentation or used any undue or improper influence to induce Mr. Weller to sign the note."

[Henry Weller's Appeal.]

The Court discharged the rule, and WICKES, J., delivered the following opinion:

"If the defendant, Henry Weller, occupied the position of a guarantor instead of a surety in the note upon which this judgment was entered, there would be much force in the contention that the delay of the plaintiff, in proceeding to collect it, until after the insolvency of Daniel Miller, the principal, is fatal to his claim against the surety.

It is clear that the contract of guaranty is conditional on the creditor's diligence to collect the debt, but that mere delay will not release a surety; to be released, he must demand proceedings, with notice that he will not be bound if they are not instituted: 2 P. F. Sm., 440, 525; 3 Penn. R., 437, 9 P. F. S., 356. There is no evidence that such a demand was ever made upon the plaintiff, and mere forbearance or delay will not operate to discharge the surety from his liability. Nor would the fact that Miller paid the plaintiff a bonus for the use of the money, or at times more than the legal rate of interest, discharge the surety, unless there was evidence of some change in the contract. Of this, however, there is no evidence; indeed, it is denied by the plaintiff that he ever charged usurious interest, and that whatever was paid above six per cent. was when Miller voluntarily paid him something for waiting when the interest became due. But there is nothing to show that the original contract was changed and without this the surety would not be released: 9 Casey, 106.

Nor does the evidence submitted in support of the application show such 'mistake, misrepresentation, and laches,' either on the part of the plaintiff or principal, as entitles the defendant, Weller, to be released from his liability.

It is not pretended that any fraud was practiced upon him to induce him to sign this note. But it is said he was misled by the appearance of Keener's name at the foot of the note, and supposed himself protected by Keener's liability. He was asked to sign the note by Miller, who told him he wanted to borrow some money. Whether he told him from Keener or not, is perhaps doubtful. Weller says not. Miller says 'yes' and 'no.'

But Weller signed a joint and several note as surety for Miller, and the note showed on its face that John Keener was the payee. His name appeared, it is true, by mistake as maker also, but the error was apparent on the face of the note, and the case is absolutely destitute of evidence to show collusion between Keener and Miller

to mislead him. Keener was not present when Miller signed the note and never seems to have had any communication with him on the subject; he ought not, therefore, to be affected by what took place between Miller and Weller at the time: Graves *v.* Tucker, 10 Smed. & M., 9 But apart from this, if at the time of signing, Weller chose to rely upon what Miller affirmed as to the note, he cannot now avail himself of the mistake, as it was a matter entirely open to his own inquiry: 10 Casey, 365. It is said he is an illiterate man, and only imperfectly understood English. The second resolution in Thoroughgood's case was that an illiterate man need not execute a deed before it is read to him in a language he understands, but if he do, without desiring it to be read, the deed is binding: 17 P. F. S., 389.

I do not, therefore, see that there is anything in the defense set up which the defendant is entitled to have submitted to a jury. We must therefore discharge the rule."

The defendant, Henry Weller, thereupon appealed, and assigned as error the decree of the Court in ordering the record to be amended by striking off the name of John Keener as one of the defendants, and the refusal of the Court to open the judgment against Henry Weller and let him into a defense."

*H. C. Niles* for appellant.

The Court has no power, on the evidence offered, to strike out the name of John Keener. Amendments depriving the opposite party of any valuable right should not be allowed: Kille *v.* Ege, 1 Norris, 110; Story's, sec. 155; Brightly's, 64, 117; Willard's, 64; Adams', 169; Mays *v.* Dwight, 1 Norris, 462; Ice Co. *v.* Ins. Co., 31 Barb., 72; Nevius *v.* Dunlap, 33 N. Y., 680; Mead *v.* Ins. Co., 64 N. Y., 453.

The Court undertook to amend a nullity into a binding contract: Faulkner *v.* Lowe, 2 Exch., 595; Teague *v.* Hubbard, 8 B. & C., 345; Moffat *v.* Van Mullingen, 2 Chitty, 539; Graham *v.* Harris, 5 G. & J., 489; Eastman *v.* Wright, 6 Pick, 316.

Any alteration releases a surety: Blest *v.* Brown, 8 Jurest, N. S., 602.

*E. D. Ziegler* for appellee.

Acts of May 4, 1852, sec. 2, and 12th April, 1858, give the Court power to amend, by striking the name of one of

the defendants from the record. Such amendment did not change the contract.

OCTOBER 18, 1883.—The opinion of the Court was delivered by PAXSON, J.

This was an appeal from the refusal of the Court below to open a judgment entered upon a warrant of attorney. It was not denied that the appellant was a surety, and that when he signed the note it had attached to it the names of John Keener and Daniel Miller as makers. In point of fact Keener was the payee, Miller the principal, and the appellant his surety. It was alleged by the appellee that the name of Keener as maker was signed by mistake, and upon his own motion the Court below subsequently amended the record of the judgment by striking out his name, leaving it to stand as a judgment of John Keener *v.* Daniel Miller and Henry Weller. This amendment and the refusal of the Court to open the judgment are assigned for errors.

It was urged that the amendment came within the second section of the act of 4th May, 1852, P. L., 574, which provides : " That all actions pending or hereafter to be brought in the several courts of this Commonwealth, and in all cases of judgment entered by confession, the said courts shall have power in any stage of the proceedings to permit amendments by changing or adding the name or names of any party, plaintiff or defendant, whenever it shall appear to them that a mistake or omission has been made in the name or names of any such party."

The act of 12th of April, 1858, P. L., 243, declares that the second section of the act of 1832, above cited, "shall be so construed as to authorize the said courts, whereby reason of there being too many persons included as plaintiffs or defendants by mistake as will prevent the cause from being tried on its merits, to permit an amendment by striking out from the suit such persons as plaintiffs or defendants." Statutes of amendment very properly receive a liberal construction. But amendments which deprive the opposite party of any valuable right should not be allowed : Kille *v.* Ege, 1 Norris, 102. Has the appellant been injured by the amendment, or deprived of any valuable right ? He alleges that he signed the note on the strength of Keener's name, knowing him to be responsible. Even if this be so, appellant would not be relieved unless some fraud was practiced upon him. It is *not* pretended there was any collusion between Keener and Miller. The appellant knew when he signed the note that he was

becoming bail for Miller. He knew the latter expected to raise money upon the note. If he had read the note he would have seen that Keener was the payee. This of itself was sufficient to put the appellant upon inquiry. It is true the note of Keener to his own order was regular, and might have passed from hand to hand without comment. But when Miller took such a note to appellant and asked him to become bail for him (Miller) upon it, the case is widely different. As before stated, the object of the transaction was to enable Miller to get money from some one. From whom could he get it but Keener? The note was payable to his order, and could not be used without his indorsement A man of ordinary intelligence could not have been deceived by Keener's name appearing on the note as maker. In any event, there was such an irregularity as to put appellant upon inquiry. If he had made such inquiry he would have ascertained the truth ; that Miller was to get the money from Keener, and that he (appellant) was becoming bail for Miller to Keener.

That the appellant was an illiterate man and understands the English language imperfectly does not affect the case in the absence of any fraud practiced upon him. No one is bound to sign an instrument which he does not understand. If, however, he does sign it without asking to have it read or explained to him, he is bound by it : Thoroughgood's case, 17 P. F. S., 389. The courts have gone far enough in relieving men from their obligations upon the plea of ignorance.

The appellant intended to become bail for Miller. He might have known, and would have known if he had asked the question, that the money was to come from Keener. This would have made it clear that the signature of the latter as maker was a blunder.

We find no error in this record.

                                   Judgment affirmed.